UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL W. DUMONT,
                        Plaintiff,


v.                                                              Case No. 3:13-CV-0873 (GTS/DEP)


UNITED STATES OF AMERICA; WALTER L.
McINTONSH'S ESTATE; ATTORNEY JAMES
H. FERTIG; ATTORNEY JOHN D. CAMERON;
THELMA J. ADAMS; JOHN A. HOHL; JOSE S.
APARICIO; CHENANGO COUNTY JAIL; DR.
JOHN BRERETON; and DONNA M. MINCHEW,
                        Defendants.
_____

APPEARANCES:                              OF COUNSEL:

DANIEL W. DUMONT
  Plaintiff, *Pro Se*
7 Elm Place
Albany, NY 12203

HON. RICHARD S. HARTUNIAN              CHARLES E. ROBERTS, ESQ.
  United States Attorney for the N.D.N.Y.
  Counsel for Defendant, United States of America
James Hanley U.S. Courthouse
100 South Clinton Street
Syracuse, NY 13261-7198

FERTIG LAW OFFICE                      JAMES H. FERTIG, ESQ.
  Defendant, *Pro Se* and
P.O. Box 189
14 North Chenango Street
Greene, NY 13778-0189

JOHN D. CAMERON, ESQ.                  JOHN D. CAMERON, ESQ.
  Defendant, *Pro Se*
P.O. Box E
12 Green Street
New Berlin, NY 13411

OFFICE OF FRANK W. MILLER                     CHARLES C. SPAGNOLI, ESQ.
  Counsel for Defendant, Chenango County Jail
6575 Kirkville Road
East Syracuse, NY 13057

BURKE, SCOLAMIERO, MORTATI &
  HURD, LLP                                   PETER N. SCOLAMIERO, ESQ.
  Counsel for Defendant, Dr. John Brereton
7 Washington Square
Albany, NY 12212

Donna M. Minchew, Walter L. McIntosh's Estate,
  Thelma J. Adams, John A. Hohl and Jose S.
  Aparicio, Defendants                        No appearance


GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court is a civil rights complaint filed by *pro se* plaintiff, Daniel W.

Dumont ("Plaintiff") against the ten above-captioned government entities, individuals, and

decedent's estate ("Defendants") as well as two motions by Plaintiff to remove two civil

proceedings filed against him in the Surrogate's Court of the State of New York, County of

Chenango, Index Nos. 2013-6/B and 2013-00525.  (Dkt. Nos. 1, 5, 8.)  Also before the Court are

motions to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure

by defendants, Chenango County Jail, Attorney James H. Fertig[1], Attorney John D. Cameron and

United States of America.  (Dkt. Nos. 9, 19, 23, 24.)  Finally, Plaintiff has filed a motion to

supplement his complaint with three additional defendants and allegations regarding his arrest on

November 14, 2013 as well as a separate letter motion seeking to add a fourth defendant.  (Dkt.

---

[1]      Attorney James Fertig argues in favor of dismissal of this action against him, but
asserts that Thelma J. Adams, John A. Hohl and Jose S. Aparicio, executors of Walter L.
McIntosh's Estate, join in his motion.  (*See* Dkt. No. 19, at 1, n.1 [Def. Fertig's Mem. of Law].)

Nos. 36, 43.)  Plaintiff has paid the filing fee required to commence this action.  For the reasons set forth below, Plaintiff's motions to remove and to amend the complaint are denied, the motions to dismiss are granted and the remaining claims are *sua sponte* dismissed with prejudice.

## I.    RELEVANT BACKGROUND

In his complaint, Plaintiff alleges that his domestic partner of sixteen years, Walter L. McIntosh ("McIntosh"), passed away in January 2013 after a long illness.  Plaintiff and McIntosh resided together at a home owned by McIntosh in Chenango County, New York ("the Property").  Plaintiff asserts that he and McIntosh executed wills and powers of attorney in 1998, but that, unbeknownst to Plaintiff, McIntosh executed another will in 2007, wherein Plaintiff received no interest in the Property.  Plaintiff asserts that McIntosh was not competent to execute the 2007 will and that various of the defendants promoted and supported McIntosh's execution of the 2007 will despite knowing he lacked competence to do so.

On February 26, 2013, Plaintiff commenced an action in this court against many of the same defendants named in the current action.  On June 17, 2013, Honorable Thomas J. McAvoy, Senior United States District Judge, dismissed that action for, among other reasons, Plaintiff's failure to state a claim against defendants upon which relief can be granted.  *See Dumont v. Fertig*, No.13-CV-214, Dkt. No. 32.  After the commencement of that action and prior to the commencement of the current action, Plaintiff served sixteen says in Chenango County Jail in April 2013 at the direction of the Surrogate's Court judge on a charge of civil contempt related to Plaintiff's refusal to vacate the Property or to allow the executors of McIntosh's estate to enter the Property to inventory McIntosh's personal property.  While Plaintiff was in Chenango County Jail, the co-executors of the 2007 will – defendants John A. Hohl ("Hohl"), Thelma J.

Adams ("Adams"), and Jose S. Aparicio ("Aparicio") (collectively "the Executors") – entered Plaintiff's home and took pictures of his personal belongings.

On July, 15, 2013, the Executors petitioned the Surrogate's Court for an order directing Plaintiff's eviction from the Property. On July 18, 2013, the Surrogate's Court issued Plaintiff an Order to Show cause why an order should not be made granting possession of the Property to McIntosh's estate.

Plaintiff now brings this civil action against the United States of America; McIntosh's estate; the Executors; John D. Cameron (the attorney who drafted McIntosh's 1998 will); James H. Fertig (the attorney who drafted McIntosh's 2007 will and currently represents McIntosh's estate) ("Fertig"); Chenango County Jail; Dr. John Brereton (a cardiologist at Chenango Hospital who apparently gave testimony to the Surrogate's Court regarding McIntosh's health condition); and Donna M. Minchew (a property appraiser for the County of Marion, Florida, who apparently made a false statement in 2005 in order to negatively affect Plaintiff's rights to property he co-owned with McIntosh in Florida) ("Minchew").

In support of his complaint, Plaintiff identifies the various wrongs committed against him by each defendant. First, Plaintiff alleges that the United States (1) failed to recognize Plaintiff's civil rights under the Ninth Amendment to the United States Constitution, (2) failed to recognize Plaintiff's permanent residence status under the Immigration and Nationality Act during the proceedings in Surrogate's Court, (3) violated Plaintiff's civil rights by discriminating against him based on his sexual orientation and pro se status in violation of 18 U.S.C. § 245 and the Hate Crime Prevention Act, (4) failed to recognize Plaintiff's right to a trial under the Sixth Amendment when Plaintiff was arrested and incarcerated at the Chenango County Jail; (5)

violated Plaintiff's rights under the Fourth Amendment when Defendants entered his home while Plaintiff was incarcerated; (6) violated Plaintiff's right to due process when Defendants let Plaintiff out of jail only three days prior to a hearing in Surrogate's Court, leaving Plaintiff unprepared for the hearing; and (7) violated Plaintiff Seventh Amendment right to a jury trial. Plaintiff asserts that he named the United States as a defendant to protect himself from bias in these judicial proceedings. Plaintiff seeks $21.00 in damages from the United States as well as an order (1) directing review of this Court's Local Rules and the Federal Rules regarding *pro se* litigants; (2) declaring that only human beings are protected under the United States Constitution; and (3) directing an amendment to the United States Constitution specifying that only human beings are protected by the United States Constitution.

Plaintiff alleges that McIntosh executed the 2007 will without giving notice to Plaintiff in violation of their 1998 agreement and that Plaintiff cared for McIntosh and paid expenses after McIntosh's death without knowledge of the 2007 will. Therefore, Plaintiff asserts that McIntosh's estate is liable to him for $1,221,000.

Plaintiff alleges that attorneys Fertig and Cameron conspired together to illegally discard the 1998 will. Plaintiff alleges that the Executors (defendants Hohl, Adams and Aparicio) (1) promoted and supported the 2007 will despite knowing McIntosh was not competent to execute that will, (2) opposed the 1998 will without bases to do so, (3) broke into Plaintiff's house on April 16, 2013 and took photos of Plaintiff's personal property, and (4) sent Plaintiff to jail on April 15, 2013. Plaintiff further alleges that in 2005, Hohl and defendant Minchew conspired with one another to negatively affect Plaintiff's rights to property Plaintiff owned with McIntosh as joint tenants with rights of survivorship in Florida. Plaintiff alleges that Dr. John Brereton

gave false information to the Surrogate's Court regarding McIntosh's health. Finally, Plaintiff

alleges that an officer or officers at the Chenango County Jail (1) refused to allow him a phone

call as required by law; (2) failed to mail letters Plaintiff wrote to the President of the United

States and the Prime Minister; and (3) became so angry at Plaintiff that Plaintiff felt he was in

danger and, Plaintiff believes, if not for the presence of others, would have physically attacked

Plaintiff.

Contemporaneously with the filing of his complaint, Plaintiff filed a motion for removal

of two civil actions in the Chenango County Surrogate's Court. In the Surrogate's Court actions,

the court issued orders to show cause why Plaintiff should not be evicted from the Property and

why Plaintiff should not be required to pay rent until he vacates the Property. Plaintiff asserts

that he will not survive without federal court intervention and that "removal appears the only

adequate cause of action to take . . . to give us all[] the time to see what is going on in this case

before my life is completely destroy[ed] by the Defendants." (Dkt. No. 5 [Pl's Mot. for

Removal].) On August 6, 2013, Plaintiff filed a second motion to remove, seeking the same

relief sought in his original motion to remove. (*Compare* Dkt. No. 8 with Dkt. No. 5.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Dismissal for Failure to State Claim

It has long been understood that a complaint may be dismissed for failure to state a claim

upon which relief can be granted on either or both of two grounds: (1) a challenge to the

"sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal

cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16

(N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing

so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-

46, 78 S. Ct. 99 (1957), that "a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69. Rather

than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice"

standard turns on the *plausibility* of an actionable claim. *Id*. at 556-70, 127 S. Ct. at 1965-74.

The Court explained that, while this does not mean that a pleading need "set out in detail the

facts upon which [the claim is based]," it does mean the pleading must contain at least "some

factual allegation[s]." *Id*. at 555, 127 S. Ct. at 1965, n.3. More specifically, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level [to a plausible

level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 554, 127 S.

Ct. at 1965.[2]

---

[2]     It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in
*Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks
later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated,
"*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).
*Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added). That
statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley*
and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the
claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at
1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*, at 678, 129 S. Ct. at 1949.

---

pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases). Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. *See Vega,* 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases). Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28.

A few words are appropriate regarding what documents are considered when deciding whether a complaint must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.*, No. 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).

Finally, it is important to note that, although the court has the duty to show liberality towards *pro se* litigants, *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact that plaintiff has paid statutory filing fee).

**B.**      **Legal Standard Governing Dismissal for Lack of Subject Matter Jurisdiction**

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving whether to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).  When a court evaluates whether to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a federal question is presented or when the parties are of diverse citizenship and the amount in question exceeds $75,000.

"Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *Village of Millbrook v. Forrest*, 903 F. Supp. 599, 600 (S.D.N.Y. 1995) (quoting *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975)).

### C. Legal Standard Governing Review of a Notice of Removal

A state court action may be removed to federal court only in limited circumstances where the federal court has original jurisdiction over the claims in the plaintiff's complaint. 28 U.S.C. § 1441. "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litigation*, 929 F. Supp. 174, 178 (S.D.N.Y.1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S. Ct. 868 (1941)) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *see also Deming v. Nationwide Mutual Ins. Co.*, No. 03-CV-1225, 2004 WL 332741, at *1 (D.Conn. Feb. 14, 2004) ("federal courts construe the removal statute narrowly, resolving any doubts against removability.") (*quoting Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir.1991)). "The burden is on the removing party to prove that it has met the requirements for removal." *Codapro Corp. v. Wilson*, 997 F. Supp. 322,

325 (E.D.N.Y.1998) (quoting *Avon Products, Inc. v. The A/J Partnership*, 89-CV-3743/8032, 1990 WL 422416, at *1 (S.D.N.Y. March 1, 1990)); *see also NASDAQ Market Makers*, 929 F. Supp. at 178.

Where a case has been improperly removed to federal court, summary remand to the state court is proper. 28 U.S.C. § 1447(c). Section 1447(c) provides two grounds for remand: (1) a defect in the removal procedure and (2) a lack of subject matter jurisdiction. *See Fried v. Lehman Bros. Real Estate Associates III, L.P.*, No. 11-CV-4141, 2013 WL 2359493, at *4 (S.D.N.Y. May 30, 2013) (citing *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127, 116 S. Ct. 494 (1995)). Removal statutes are to be strictly construed against removal and in favor of remand. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013) (citing *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32-33, 123 S. Ct. 366 (2002); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22, 103 S. Ct. 2841 (1983)).

In order to remove a case from state court to federal court on the basis of federal question jurisdiction, the removing party must show that the action, as originally filed in state court, presents a federal question. A federal question arises if a substantial, disputed question of federal law is presented on the face of the well-pleaded complaint. *See City of Rome, New York v. Verizon Commc'ns, Inc.* 362 F.3d 168, 174 (2d Cir. 2004) (citing *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6, 123 S. Ct. 2058 (2003)).

### D.    Legal Standard Governing Motions to Amend or Supplement a Complaint

A motion for leave to amend a complaint is governed by Rule 15 of the Federal Rules of Civil Procedure, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962);

13

*Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.1993). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir.1979); *Meyer v. First Franklin Loan Servs, Inc.*, No. 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, No. 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, — F.R.D. —, —, 2013 WL 4045810, at *3 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir.2002)). Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted. *See id.* (citations omitted).

Rule 15(d) of the Federal Rules of Civil Procedure provides that a party must obtain leave from the court to supplement a pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented. Rule 15(d) allows a party to supplement the complaint in order to present subsequent material that is related to the claims presented in the original complaint. *See Labarbera v. Audax Const. Corp.*, — F. Supp. 2d —, —, 2013 WL 5295493, at *8 (E.D.N.Y. 2013) (citing *Argus, Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 602 (S.D.N.Y.1982) (citing 3 Moore's Federal Practice ¶ 15.16[1], at 15176 (2d ed.1982))). Matters stated in a supplemental complaint should have some relation to the claim

set forth in the original pleading. *See* 3 Moore's Federal Practice ¶ 15.16[3], at 15183 (2d ed.1989). As with Rule 15(a), the decision to grant or deny a Rule 15(d) motion is within the sound discretion of the district court. *See id.*

### E.    Legal Standards Governing Plaintiff's Claims

#### 1.    42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018).

Under the doctrine of sovereign immunity "the United States may not be sued without its consent, and the existence of consent is a prerequisite for jurisdiction." *Williams v. United*

*States*, No. 07-CV-3018, 2010 WL 963474, at *7 (S.D.N.Y. Feb. 25, 2010) (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir.2004)). "Congress can, however, waive sovereign immunity through statutes explicitly establishing a cause of action against the federal government." *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 466 (S.D.N.Y. 2006). "In other words, the United States must unequivocally express its consent to be sued by specifically waiving sovereign immunity in a statutory text." *Williams*, 2010 WL 963474, at *7 (citing *Lane v. Peña*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096 (1996)). However, the Congress has not waived its sovereign immunity for claims under Section 1983. *See Jones*, 409 F. Supp. 2d at 466. A finding of sovereign immunity deprives a court of subject matter jurisdiction. *See Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir.2005).

## III.    ANALYSIS

### A.    Plaintiff's Motions for Removal Must Be Denied

Plaintiff's motions for removal of two Surrogate's Court actions is denied for the following two reasons.

First, the state court actions Plaintiff seeks to remove do not on their face present a federal question. Rather, the petitions filed in Surrogate's Court invoke provisions of state law regarding the probate of McIntosh's estate. *See Castiglione v. Papa*, 423 F. App'x 10, 13 (2d Cir. 2011). Accordingly, the Court lacks jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Second, "probate matters are excepted from the scope of federal diversity jurisdiction." *United States v. Blake*, — F. Supp. 2d —, —, 2013 WL 1728937, at *7 (E.D.N.Y. 2013) (quoting *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir.2007)). Accordingly, the Court lacks jurisdiction of this action pursuant to 28 U.S.C. § 1332.

Third, Plaintiff's motions do not comply with proper procedure for removal of a State court action to federal court. A defendant desiring to remove any civil action from a State court must file a Notice of Removal in accordance with 28 U.S.C. § 1446. Here, Plaintiff has filed motions for removal contemporaneously with, and subsequent to, the filing of his complaint in this civil rights action. Accordingly, Plaintiff's motions for removal are procedurally defective.

For these reasons, Plaintiff's motion for removal are denied and the above-referenced State court actions are remanded to the Surrogate's Court of the State of New York, Chenango County.

**B.      Plaintiff's Claims Against the United States Must Be Dismissed**

Plaintiff's claims against the United States must be dismissed for the following two reasons.

First, as indicated in Point II.D.1. of this Decision and Order, the United States has not waived its sovereign immunity for civil rights claims. *See Jones*, 409 F. Supp. 2d at 466. Accordingly, this Court lacks subject matter jurisdiction of Plaintiff's claims against the United States. *See Dotson*, 398 F.3d at 177. For this reason alone, Plaintiff's claims against the United States must be dismissed.

Second, Plaintiff fails to allege any wrongdoing on the part of any employee or agent of the United States that would give rise to any cause of action. For this reason alone, Plaintiff's claims against the United States must be dismissed.

Accordingly, Plaintiff's claims against the United States are dismissed.

**C.      Plaintiff's Claims Against the County of Chenango Must Be Dismissed**

Plaintiff's claims against the Chenango County Jail must be dismissed for the following two reasons.

First, it is important to note that the Chenango County Jail is not an entity that may be sued. An administrative arm of a municipality, such as the Chenango County Jail "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Leland v. Moran*, 100 F. Supp. 2d 140, 145 (N.D.N.Y.2000) (internal quotation omitted). *See also Sullins v. Nassau Cnty. Jail Corr. Ctr.*, No. 12-CV-2632, 2012 WL 2458213, at *3 (E.D.N.Y. June 27, 2012). Given Plaintiff's *pro se* status, the Court will construe his claims to be asserted against Chenango County. Nonetheless, Plaintiff fails to allege facts plausibly suggesting that the County of Chenango has any policy or custom pursuant to which his rights were violated. For this reason alone, Plaintiff's claims against the County of Chenango must be dismissed.

Second, to the extent Plaintiff purports to assert an excessive force claim, it must be dismissed. Plaintiff alleges that an officer became so angry that Plaintiff felt his life was in danger, and that Plaintiff believes the officer would have physically attacked him had others not been present. Plaintiff alleges that, in any event, he was psychologically injured as a result. Because Plaintiff does not allege any use of force, he fails to state a plausible claim under either the Fourth Amendment or the Eighth Amendment. *See Swift v. Mauro*, No. 04-CV-0899, 2008 WL 207793, at *2-3 (N.D.N.Y. Jan. 24, 2008). For this reason alone, Plaintiff's excessive force claim against the County must be dismissed.

For these reasons, Plaintiff's claims against the County of Chenango are dismissed.

### D.     Plaintiff's Remaining Claims Must Be Dismissed

The remainder of Plaintiff's claims must be dismissed for the following two reasons.

First, Plaintiff's claims against Fertig, Hohl, Adams, Aparicio and Minchew are dismissed under the doctrine of *res judicata*. "The doctrine of *res judicata* provides that a final

judgment on the merits bars a subsequent action between the same parties over the same cause of action." *Burberry Ltd. v. Horowitz*, No. 12-CV-1219, 2012 WL 5904808, at *2 (S.D.N.Y. Nov. 26, 2012) (quoting *Ljutica v. Holder*, 588 F.3d 119, 126 (2d Cir. 2009)). Where a "prior decision was (1) a final judgment on the merits; (2) by a court of competent jurisdiction; (3) in a case involving the same parties or their privies; and (4) involving the same cause of action[,]" *res judicata* applies to bar the subsequent action. *Burberry*, 2012 WL 5904808, at *2 (quoting *In re Teltronics Services, Inc.,* 762 F.2d 185, 190 (2d Cir.1985) (citing *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948))). Here, the same claims Plaintiff asserts in this action against defendants Fertig, Hohl, Adams, Aparicio and Minchew were previously brought by Plaintiff against those same defendants in this Court. In the previous action, Judge McAvoy dismissed those claims and entered a final judgment against Plaintiff. Accordingly, for this reason alone, Plaintiff's claims in the current action against defendants Fertig, Hohl, Adams, Aparicio and Minchew are dismissed.

Second, Plaintiff has failed to allege any facts plausibly suggesting that any of the remaining defendants are state actors. As indicated in Point II.D.1. of this Decision and Order, in order to state a claim for the violation of constitutional rights under Section 1983, a Plaintiff must allege that defendants are state actors. Accordingly, for this reason alone, Plaintiff's claims against the remaining defendants must be dismissed.

For these reasons, Plaintiff's claims against defendants McIntosh's estate, Fertig, Cameron, Adams, Hohl, Aparicio, Brereton and Minchew are dismissed.

### E.     Plaintiff's Motions to Amend or Supplement His Complaint Must Be Denied

Plaintiff seeks to supplement his complaint with allegations regarding his alleged arrest on November 14, 2013 and to amend his complaint to add as defendants the Chenango County

Sheriff's Office as well as its employees, Sergeant C. Ted Ellingsen and Deputy Anthony E. Lawrence.

According to Plaintiff, he was arrested "under false accusations" and was "physically abused" by a Deputy of the Chenango County Sheriff's Office. (Dkt. No. 36-1, at 4 [Pl.'s Proposed Amended Compl.].) Specifically, Plaintiff alleges that existing defendants Fertig, Adams, Hohl and Aparicio acted together and with the Sheriff's Office, Deputy Lawrence, and Sergeant Ellingsen to make false statements which lead to false criminal charges against, and arrest of, Plaintiff on November 14, 2013. Plaintiff further alleges that, while photographing and fingerprinting Plaintiff, Deputy Lawrence "physically abused" Plaintiff by "twist[ing his] arm and fingers almost to the breaking point." (*Id.* at 18.)

Additionally, Plaintiff filed a letter motion seeking to add Mrs. Brenda Friedel as a defendant. Mrs. Friedel is the official reporter who Plaintiff alleges incorrectly recorded the hearing held in Surrogate's Court on February 22, 2013.

Plaintiff's proposed amended complaint and accompanying memorandum of law and affidavit are devoid of any non-conclusory allegations which would plausibly state a claim against the existing defendants Fertig, Adams, Hohl and Aparicio. Moreover, Plaintiff fails to allege any facts plausibly alleging a claim against Sergeant Ellingsen or the Sheriff's Office. To the extent Plaintiff alleges a battery or excessive force claim against Deputy Lawrence, the proposed amended complaint and accompanying papers fail to establish a relationship between his arrest and the alleged claims in the original complaint. Finally, Plaintiff fails to allege any facts plausibly stating a claim against Mrs. Brenda Friedel. For these reasons, Plaintiff's motions to amend or supplement his complaint must be denied.

### F. Whether the Court Should Give Plaintiff an Opportunity to Further Amend His Complaint Before Dismissing Any of His Claims

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where, as here, the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted).

Moreover, this rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at *1. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8; rather, as both the Supreme Court and Second

Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8 are procedural rules that even *pro se* civil rights plaintiffs must follow.

For these reasons, Plaintiff will not be given leave to amend his Complaint. Plaintiff's claims are dismissed with prejudice.

### G.    Defendant Fertig's Motion for Sanctions Under Rule 11

In the final paragraph of his memorandum of law in support of his motion to dismiss Plaintiff's claims against him, the Executors and McIntosh's Estate, Fertig asserts a "Motion for Sanctions Pursuant to Fed. R. Civ. P. 11." (*See* Dkt. No. 19, at 4 [Def. Fertig's Mem. of Law].)

Although Plaintiff's claims appear frivolous, Fertig's motion for sanctions and to bar plaintiff from future similar filings fails to comply with the procedural requirements of Fed. R. Civ. P. 11(c)(2).[3] Therefore, this part of the motion must be denied. *See Houston v. Manheim-New York*, 475 F. App'x 776, 779 (2d Cir. April 11, 2012) ("[R]emanding to the District Court on the motion for sanctions would be futile because [plaintiff] violated Rule 11(c)(2) of the Federal Rules of Civil Procedure, a safe harbor provision, which required him to serve the sanctions motion on the opposing party twenty-one days prior to its filing."); *Fierro v. Gallucci*, 423 F. App'x 17, 18-19 (2d Cir. May 23, 2011) ("[T]he district court was required to deny plaintiffs' motion for sanctions for failure to comply with the 21–day 'safe harbor,' which

---

[3]       Fed. R. Civ. P. 11(c)(2) provides, in pertinent part:

Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

requires Rule 11 motions to be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims.").

However, Plaintiff is strongly cautioned that, should he re-file any of his dismissed claims in this Court, he will be issued an Order to Show Cause why sanctions should not be imposed against him under Fed. R. Civ. P. 11.  Plaintiff is further warned that he is not protected from Rule 11 sanctions merely because he appears *pro se*.  *See Mac Truong v. Hung Thi Nguyen*, No. 10-CV-386, 2013 WL 4505190, at *3 (S.D.N.Y. Aug. 22, 2013) (citing *Malley v. New York City Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) ("The fact that a litigant appears pro se does not shield him from Rule 11 sanctions.")).

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motions to remove the above-reference State court actions (Dkt. Nos. 5, 8) are **DENIED**; and it is further

**ORDERED** that the above-referenced State court actions are remanded to the Surrogate's Court of the State of New York, Chenango County; and it is further

**ORDERED** that the motion to dismiss the complaint by defendant Chenango County Jail (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that the motion to dismiss the complaint by defendants Fertig, Estate of McIntosh, and Executors Adams, Hohl and Aparicio (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that the motion to dismiss the complaint by defendant Cameron (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that the motion to dismiss the complaint by defendant United States of America (Dkt. No. 24) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's motion to amend or supplement his complaint (Dkt. No. 36) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's Letter Motion to join an additional defendant (Dkt. No. 43) is <u>DENIED</u>; and it is further

**ORDERED** that, the Court having reviewed Plaintiff's Complaint and having concluded that there is no basis in law or fact for any of Plaintiff's claims and that leave to re-plead would be futile, Plaintiff's Complaint as against all defendants (Dkt. No. 1) is **<u>DISMISSED</u>** in its entirely **<u>with prejudice</u>**; and it is further

**ORDERED** that Plaintiff's motion for a protective order (Dkt. No. 28), Letter Request (Dkt. No. 33) and Letter Request Motions (Dkt. Nos. 38, 39) are **<u>DENIED</u>** as moot.


Dated: December 3, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge